## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DAVID BOY FULLER,          )
                           )
      Plaintiff,           )
                           )
v.                         )     Case no. 2:14-cv-110-CLS-TMP
                           )
CAPTAIN BALDWIN, et. al.,   )
                           )
      Defendants.          )

## REPORT AND RECOMMENDATION

On January 14, 2014,[1] David Boy Fuller, hereinafter referred to as the plaintiff, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983.  (Doc. 1).  He asserts constitutional, state, and common law claims based upon incidents that occurred during his incarceration at W. E. Donaldson Correctional Facility in Bessemer, Alabama.   (*Id.* at 6).

The plaintiff names as defendants the Alabama Department of Corrections and the following individuals: Capt. Baldwin, Lt. Poe, Officers Wilson, B. Robinson, S. Harrison, Lewis, R. Gadson, Leggett, Goldsmith and Given, and

---

[1] Because prisoners proceeding *pro se* have virtually no control over the mailing of their pleadings, their pleadings are deemed to be filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed.  *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988).  The record contains no information regarding the date the plaintiff gave his complaint to prison officials to mail, so the court deems the complaint to have been filed on the day he signed it.  (The complaint was not received by this court until January 17, 2014).

Nurses Dimi, [2] Gant, Vinson and Ladu. [3] He seeks monetary damages and declaratory and injunctive relief.  (*Id*. at 7-8).   On April 9, 2014, the plaintiff filed a "Complaint Arising from Retaliation," which the undersigned shall construe as a Motion to Amend the Complaint, and which is **GRANTED**.  (Doc. 8).   On October 22, 2014, the plaintiff notified the court he now is an inmate at Holman Correctional Facility, in Atmore, Alabama.   (Doc. 9).   In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Standard of Review

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, 28 U.S.C. § 1915A, requires the court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint it determines is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.   Where practicable, the court may *sua sponte*

---

[2] Throughout his pleadings, the plaintiff spells this defendant's surname "Dimi," "Diming," and "Dimming."   Since the exact spelling of this defendant's name is unknown, the court shall utilize the spelling "Diming" to address all claims against her.

[3] All but Goldsmith were identified as defendants in the style of the complaint.   (Doc. 1 at 1-3).

dismiss a prisoner's complaint prior to service.   *See* 28 U.S.C. § 1915A(a).

A dismissal pursuant to § 1915A (b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6).   *See Jones v. Bock*, 549 U.S. 199, 215 (2007).   To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).   A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## II.   Factual Allegations

### A.   Complaint

In January 2014, Nurse Vinson "delayed doing a[n] E.K.G." on the plaintiff. (Doc. 1 at 3).   R.N. Green ordered Vinson to treat him, and Nurse McGoo performed the E.K.G.   (*Id.*).   When McGoo "took the plaintiff's medical paper[s] to the table," Nurse Vinson laughed and stated, "He need (sic) to be having a heart [attack.]" (*Id.*).

On January 4, 2014, Nurse Diming checked the plaintiff's blood pressure in the prison infirmary, and discovered that it was 188/123.   (*Id.* at 4).   Diming "told defendant Leggett to place [the plaintiff] in a ward[,] but Leggett instructed Dimi[ng']"not to document [the plaintiff's] blood pressure is (sic) that high[,]" and sent the plaintiff back to his block.   (*Id.*).

On January 8, 2014, Nurse Diming refused to see the plaintiff, and defendant Given told the plaintiff, "'You['re] not getting shit, get out.'"   (*Id.*).   The plaintiff did not get his medication.   (*Id.*).   The Shift Commander, Lt. Poe, called Officer Baldwin, and twenty "minutes later [Baldwin] told the plaintiff to pack up[.]"   (*Id.*).

The plaintiff asserts the "cube" in his unit has "white [paper] going all the way around it."   (*Id.*).   He asked defendants Parks, Wilson, Gadson, Goldsmith and Lewis, the officers who were "working the cube," "to monitor his cell" because he "is a [sick] diabetic[,] . . . ha[s] chest problems, and his blood pressure [gets] high[.]" (*Id.*). However, these officers "never took the [white] papers down to protect [his] safety."   (*Id.*).

On January 10, 2014, the plaintiff answered affirmatively when Officer Robinson asked if anyone wanted to shower.   (*Id.* at 5).   "Robinson tried to force one handcuff on the plaintiff[,]" but it would not work because the plaintiff is over six feet tall and weighs 357 pounds.   (*Id.*).   The plaintiff asked Robinson to use two

4

handcuffs, but Robinson refused, and therefore, the plaintiff was denied a shower. (*Id.*).

A few minutes later, "the plaintiff blacked-out and hit his head on a rock in the cell." (*Id.*). The pill call nurse found the plaintiff in the floor, but defendants Harrison and Nurse Gant left him there. (*Id.*). "The inmates beat on the cell doors trying to get a rover in the unit." (*Id.*). Defendant Robinson, along with Sgt. Johnson and Lt. Arthur, came down and placed the plaintiff on a stretcher. (*Id.*). Johnson photographed the knot on the plaintiff's head in the infirmary. (*Id.*).

The plaintiff also alleges Capt. Baldwin and Lt. Poe placed him in an unsanitary cell "without a light," toilet water "running on the floor[,] and paper all over the cube." (*Id.* at 5-6). He asked defendants Gadson, Lewis and Wilson to take the "paper down[, but] they put more up there." (*Id.* at 5).

As of January 14, 2014, the plaintiff had been incarcerated at W.E. Donaldson Correctional Facility for seven months. (*Id.* at 6). During this time, Nurse Ladu never saw the plaintiff for his diabetes or blood pressure even though she sees all chronic care inmates. (*Id.*). Although he had "put in sick call about his feet[] and right leg" Ladu had "delay[ed]" seeing him for the entire time he had been at the facility because the plaintiff had previously sued her. (*Id.*). He declares Ladu's conduct was unprofessional and personal. (*Id.*).

The plaintiff claims the foregoing allegations

> are incidents or evidence of common-law statutory and/or constitutional torts. . . and Alabama statutory or common law.  The claim[s] in the complaint are clear violations of the First, Eight[h] and Fourteenth Amendments requiring the MCJ to provide [him] with adequate access to courts, adequate medical care, due process[,]  . . . equal protection of law and freedom from retaliation and deleterious conditions of confinement.

(*Id.*).

He demands a jury trial, costs, compensatory and punitive damages, declaratory relief, and an injunctive order to prevent the defendants from conducting unreasonable searches and seizures without probable cause when he is not present, to mandate that cameras be "present" during reasonable searches, and to "stop [the] writing [of] bad reports on inmates for m[i]nor disciplinary reports."   (*Id.* at 8).

## B.    Supplemental Complaint

Nurse Diming is an employee of Corizon Medical Services (a "contracted agency") (Doc. 8 at 1).  Plaintiff alleges that on April 6, 2014, Diming issued a disciplinary against the plaintiff and accused him of "gathering in a threatening or intimidating manner," and that she did so to retaliate against the plaintiff for naming her as a defendant in this case.   (*Id.*).  He further asserts only corrections officers have the authority to write a disciplinary or act as the arresting officer on the disciplinary report.   (*Id.* at 2).  He supports this contention by pointing to

Section 3, subsection F of Administrative Regulation #403, which reads: "Employee For the purpose of this regulation, an ADOC employee is considered as any full-time, part-time, temporary employee and other persons such as, but not limited to, contractors, vendors, education personnel and volunteers." (*Id.*).

On the same day, Diming "refused to scan [his] pill cards[,]" as is required under "the new system," and "dispensed . . . the medication she assumed [he] was to receive." (*Id.*). At about 3:45 a.m., the plaintiff complained to Officer Jones (a non-defendant who was assigned to monitor pill call) about Diming's behavior, but Jones stated he could not and did not want to do anything about it. (*Id.*). Later on in the day the plaintiff "experienc[ed] stomach pain/cramps, and passed a stool of blood around 11:30 a.m." (*Id.*). Then he "experienced chest pains and had body chart and EKG test," which "they claim was normal[.]" (*Id.* at 3). The plaintiff "believe[s]" Diming gave him incorrect medication or an incorrect dose "and/or did something sinister (. . . possibly poisoned")" him "out of an act of retaliation and or revenge." (*Id.*).

The plaintiff requests injunctive relief in the following forms: the disciplinary infraction be declared "'illegal'/void" and "expunged" from his record. (*Id.* at 2). He also moves for an order preventing Nurse Diming from causing him harm by suspending her, or prohibiting her from performing pill call and dispensing the

plaintiff's medication while allowing him to "choose a trusted nurse" to do so, and that qualified persons be directed to inspect the electronic equipment to show Diming is incompetent, lazy and did not scan his pill card.   (*Id.* at 3).

### III.    Request for Injunctive Relief

To have standing to seek declaratory and injunctive relief, a plaintiff "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."   *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (additional citations omitted).   "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."   *Id.* at 101–02 (internal quotations omitted).   "'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'"   *Id.* at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Thus, "[t]he general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."   *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) (alteration supplied) (citing *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984);

*Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (per curiam)).   Once the plaintiff was transferred from W.E. Donaldson Correctional Facility, his claims regarding the conditions at that facility "no longer presented a case or controversy." *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)).   Accordingly, the plaintiff's requests for declaratory and injunctive relief are **MOOT**.

### III.   Alabama Department of Corrections

The plaintiff names the Alabama Department of Corrections as a defendant. However, law "suit[s] against the State [of Alabama] and its [agencies are] barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)).   No such consent can "be given under Art. I,   Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."   *Id.*; see also, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).   Since the Alabama Department of Corrections is an agency of the State of Alabama, Eleventh Amendment immunity prohibits the plaintiff's suit for monetary damages against it.   The rest of this report and recommendation considers

the plaintiff's request for monetary damages against the remaining defendants for the claims against them.

## IV.   Federal Constitutional Claims

### A.   First Amendment

#### 1.   Retaliation

The plaintiff alleges that on April 6, 2014, Nurse Diming retaliated against him for filing the current lawsuit against her by instituting a disciplinary infraction against him, refusing to scan his pill call slip, and possibly poisoning him.   (Doc. 8 at 1-3).   The Eleventh Circuit has held that prison officials cannot take adverse action against an inmate in retaliation for the inmate filing lawsuits and administrative grievances.   *See O'Bryant v. Finch,* 637 F.3d 1207, 1212 (11th Cir. 2011) (A retaliation claim can be stated if the prison official's actions were "the result of [a prisoner's] having filed a grievance concerning the conditions of his imprisonment." (internal quotations omitted)).

> An inmate must establish three elements to prevail on a retaliation claim. *Bennett* [*v. Hendrix*], 423 F.3d [1247,] 1250 [(11th Cir. 2005)].   The inmate must prove that: (1) "his speech or act was constitutionally protected"; (2) "the defendant's retaliatory conduct adversely affected the protected speech"; and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech."   *Id.*   To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights.   *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

*Moton v. Cowart*, 631 F.3d 1337, 1341-1342 (11th Cir. 2011).

The plaintiff's lawsuit about the conditions of his confinement at W.E. Donaldson Correctional Facility is constitutionally protected speech.   However, he has not alleged any facts to establish Nurse Diming was aware she had been sued by him.[4]   Thus, he has failed to allege facts showing causation, *i.e.,* that Diming was subjectively motivated to discipline or harm him on April 6, 2014, for filing this lawsuit.   As such, the plaintiff's retaliation claim is due to be dismissed for failure to state a claim upon which relief may be granted.

## 2.    Access to Courts

The plaintiff asserts his right of access to courts was violated, but identifies no specific allegations in support thereof and no constitutional source for his claim. Conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted.   *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).   Alternatively, the plaintiff's access-to-courts claim fails because "the right [to meaningful access to court] is *ancillary* to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).   The only conceivable underlying claims are the other constitutional claims in this case.   But the very fact

---

4 As this case is currently before the court for screening pursuant to 28 U.S.C. § 1915A, Nurse Diming has not been served with a copy of the plaintiff's complaint.

the plaintiff is litigating in this court conclusively establishes that he has not been shut out of court with respect to the other claims alleged in the original complaint. This claim is due to be dismissed for failure to state a claim upon which relief may be granted.

## B.   Eighth Amendment

### 1.   Medical Care

When an inmate claims medical care has been denied or delayed, the general standard set out above is particularized in the following manner.

> Deliberate indifference to a detainee's [or prisoner's] serious medical needs requires 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need.  *See Burnette* [*v. Taylor*], 533 F.3d [1325] at 1330 [(11th Cir. 2008)].  A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment."  *Id.*  For liability, the defendant must 1) have subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence. *Id.*

> Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay: "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs."  *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999).

*Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010).

Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable

to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to "evolving standards of decency" or involve the "unnecessary and wanton infliction of pain" to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (footnote omitted). Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999).   Likewise, a mere difference of opinion between an inmate and the prison medical staff or between members of the medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment.   *Harris*, 941 F.2d at 1505; *White v. Napoleon*, 897 F.2d 103 (3rd Cir. 1990).

### a.    Nurse Vinson

The plaintiff complains Nurse Vinson "delayed" giving him an EKG until directed to do so.   Another nurse performed the EKG, and when Nurse Vinson was handed the results, she laughed and stated "he ought to be having a heart attack." The plaintiff's use of the word "delayed" is conclusory because there are no facts to support it.   Further, he does not reveal whether the EKG was done as a routine measure or in response to symptoms he was displaying or feeling, and does not allege he required any medical treatment based on the EKG results.   Therefore, he

sets forth no facts establishing an objectively serious medical need.   There are no factual allegations from which to infer that the delay was "excessive."   Nurse Vinson made a joking comment the plaintiff finds to be insensitive and unprofessional, but this fact, standing alone, does not establish deliberate indifference to a serious medical need.   The claim against Vinson is due to be dismissed for failure to state a claim upon which relief may be granted.

### b.   Nurse Diming and Officer Leggett

The plaintiff alleges on January 4, 2014, Nurse Diming checked his blood pressure and told Officer Leggett to take the plaintiff to the infirmary because it was 188/123.   (Doc. 1 at 4).   Instead, Leggett instructed Diming not to record the reading and did not take the plaintiff to the infirmary.   (*Id.*).   The plaintiff does not allege that Diming complied with Leggett's instruction not to accurately chart his blood pressure reading, and as such, he has not established Nurse Diming was deliberately indifferent to his serious medical needs.   However, Officer Leggett ignored Diming's instruction to take the plaintiff to the infirmary.   It is well established that "if prison guards delay or deny access to medical care or intentionally interfere with treatment once prescribed, the Eighth Amendment is violated." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988) (citing

*Estelle v. Gamble*, 429 U.S. at 104-05).   Defendant Leggett will be directed to respond to the plaintiff's Eighth Amendment allegations against him.

### c.     Nurse Diming, Lt. Poe, Captain Baldwin and Officer Given

The plaintiff alleges Nurse Diming refused to see him on January 8, 2014., as a result of which, he did not get his medicine. (Doc. 1 at 4).   The plaintiff does not contend he was ill or needed the service of a medical professional on that date, and there is no allegation he wanted to see Diming for any medical reason other than to obtain some medication.   He does not declare he already had been prescribed the medication and was scheduled to receive it on that date, or that Diming was aware of this and refused to see him.

Moreover, the plaintiff does not identify the medication he should have received and why it was needed, or, if it was prescribed medication, the condition it was supposed to correct or alleviate.   He does not allege that his inability to obtain the medication, for whatever reason, caused him any adverse physical harm or effects.   Therefore, the plaintiff has failed to show that Diming was deliberately indifferent to an objectively serious medical need when she refused to see him on that date.

The plaintiff complains defendant Given rudely told him to leave when Diming refused to see him, and Lt. Poe called Officer Baldwin, who told the plaintiff

to "pack up" about twenty minutes later.  (*Id.* at 4).  The Eighth Amendment allegations against these defendants fail for the same reasons that the same claim against Diming fails.  Moreover, the plaintiff does not contend he was in such obvious medical distress that defendants Given, Poe, and Baldwin, as lay persons, recognized he had a serious medical need, and intentionally refused to procure assistance.  For all of the foregoing reasons, the Eighth Amendment claims against defendants Diming, Given, Poe, and Baldwin are due to be dismissed for failure to state a claim upon which relief may be granted.

### d.    Officer Parks, Wilson, Gadson, Goldsmith and Lewis

The plaintiff asked defendants Parks, Wilson, Gadson, Goldsmith and Lewis take the white paper down in the cube for safety reasons because he needed the cubicle officers to monitor his cell for safety reasons as he suffers from diabetes, chest pain, and blood-pressure issues.  (*Id.* at 4).  They refused to do.  (*Id.*).  The plaintiff does not reveal when he asked the officers to perform this task, nor does he contend that their failure to do take the paper down was causally connected to an identifiable incident in which officers failed to respond to his serious medical need. He does not allege he and the other inmates in the unit were locked in their cells all day such that no one, including the plaintiff, would be able to alert the defendants if he had a medical emergency.  Also, plaintiff's pleadings show that the unit was

16

equipped with rovers and inmates were visited in their cells by the pill call nurse and an assigned pill call rover, notwithstanding the obstruction of the view from the cube.   In light of these circumstances, even if the plaintiff suffered from a serious medical need while in his cell, he has not alleged sufficient facts establishing that the refusal to take down the paper in the cube constituted deliberate indifference by Officers Parks, Wilson, Gadson and Goldsmith and Lewis.   This claim is due to be dismissed.

### e.   Officer Harrison, Nurse Gant and Officer Robinson

The plaintiff alleges defendants Harrison and Nurse Gant were deliberately indifferent to his serious medical needs on January 10, 2014, because they left him in his cell after he passed out and hit his head.   (*Id.*).   He declares that other inmates began beating on their cells to get a rover in the unit. (*Id.*).   Defendant Robinson, along with Sgt. Johnson and Lt. Arthur, came down and placed the plaintiff on a stretcher.   (*Id.*).   Johnson photographed the knot on the plaintiff's head in the infirmary.   (*Id.*).

Under this factual allegation, Officer Harrison and Nurse Gant were aware that the plaintiff was unconscious in this cell, yet did nothing about it.   Regardless of the cause of plaintiff's lack of consciousness, such a condition is one which even

a lay person knows may require medical attention.   A response from these defendants will be required for this claim.

Since Robinson, Johnson, and Arthur appeared with a stretcher to assist the plaintiff, plaintiff has not alleged any basis for inferring that Officer Robinson was deliberately indifferent to plaintiff's serious medical need.   Officer Robinson's only involvement was to help place the plaintiff on a stretcher, and there is no indication that he delayed that assistance, or that the delay exacerbated plaintiff's medical condition.   The plaintiff does not contend medical professionals determined he had any injury other than a knot on his head or any ongoing serious medical condition that caused his blackout and required additional treatment.

The facts alleged by the plaintiff require further exploration with respect to defendants Harrison and Gant, but they do not establish that defendant Robinson was deliberately indifferent to his medical needs.   Therefore, the claims against defendant Robinson are due to be dismissed for failure to state a claim upon which relief may be granted.   Defendants Harrison and Gant will be required to respond to the complaint.

### f.    Nurse Ladu

The plaintiff alleges Nurse Ladu sees chronic care inmates but "delayed" seeing him for his blood pressure and diabetes for seven months because he

previously filed a lawsuit against her.   (*Id.* at 6).   He "put in for sick call" about his feet and legs, but does not describe any symptoms pertaining to them. (*Id.*). Therefore, he has not alleged sufficient facts to show an objectively serious medical need with regard to his feet and legs.

Although Ladu did not examine or treat the plaintiff's conditions for seven months, and did not respond to the sick call request, he does not allege that he received no medical care or treatment for his medical conditions from other medical professionals at W.E. Donaldson Correctional Facility during the same time period. Indeed, his own pleadings show his blood pressure was being checked by several Corizon employees during that time period.   The fact that Nurse Ladu in particular did not examine and treat the plaintiff, when other medical professionals were available to do so, fails to establish she was deliberately indifferent to any identified serious medical needs.   This claim is due to be dismissed.

### g.     Nurse Diming

On April 6, 2014, Nurse Diming refused to scan the plaintiff's pill call slip, but instead administered the medication she thought he was supposed to receive. (Doc. 8 at 2).   Later, the plaintiff felt ill, had a bloody stool, and then experienced chest pain. (*Id.*). He reported to the infirmary where an EKG was performed, and he was informed the results were normal. (*Id.*).

19

Diming failed to follow proper protocol when she did not scan the plaintiff's pill call slip. However, this fact does not constitute deliberate indifference to a serious medical need. She also administered the medication she believed the plaintiff was supposed to receive. Although the plaintiff suspects Diming may have given him the wrong medication, there no facts alleged to support this contention. That the plaintiff believes the reason he felt ill was because of the medication does not state an Eighth Amendment claim against Diming, particularly when he was examined and tested by other health professionals who found no abnormalities. Even if Diming gave the plaintiff the medication she thought he was supposed to receive, and she was wrong about it, such allegations establish nothing more than negligence, which is not actionable as a constitutional claim. Finally, his fear that Diming may have poisoned him is beyond speculative when compared to his allegations against her. Absent some factual basis for his speculation, such an allegation is frivolous and malicious for purposes of § 1915A.

For all of the foregoing reasons, this Eighth Amendment claim against Nurse Diming is due to be dismissed for failure to state a claim upon which relief may be granted.

### 2.    Conditions of Confinement

To state an Eighth Amendment conditions of confinement claim, a plaintiff

"must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, [502] U.S. [294, 303] (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted).   Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 502 U.S. at 290.

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   While it is the duty of prison officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349.   As the Eleventh Circuit Court of Appeals observed in *Newman*: "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid

mental, physical, and emotional deterioration."   559 F.2d at 291.

> [C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes v. Chapman*, 452 U.S. at 347.

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs."  *LaMarca v. Turner*, 995 F.2d at 1535.  In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  *Id*. at 1535 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986)).  *Accord Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

The plaintiff alleges he was denied a shower on one occasion because defendant Robinson would not put two sets of handcuffs on him.   The denial of one shower is not the type of extreme deprivation envisioned by the Eighth Amendment. As such, the claim against defendant Robinson is due to be dismissed for failure to state a claim upon which relief may be granted.

Next, the plaintiff alleges Capt. Baldwin and Lt. Poe placed him in an unsanitary cell "without a light," toilet water "running on the floor[,] and paper all

over the cube."   (Doc. 1 at 5-6).   Moreover, defendants Gadson, Lewis and Wilson put up even more paper around the cube after the plaintiff asked that it be taken down.   (*Id.*).   The plaintiff does not allege that he was constantly locked in his cell, and does not reveal how long he remained his cell without a light and toilet water running on the floor. He also does not declare he had no natural or artificial light in his cell from a window or the unit in which he was housed, and does he reveal how much water was running on the floor from the toilet, or whether he had the means to turn the water off and clean the floor.   Moreover, he does not assert he made Capt. Baldwin and Lt. Poe aware of these conditions and they refused to correct them.

Finally, the plaintiff complains that when he complained about the paper placed in the cube, defendants Gadson, Lewis and Wilson put more paper up. Other than the medical safety issue already addressed by the court, the plaintiff presents no allegations tending to show that the paper deprived him of a basic human need.

The conditions complained of by the plaintiff, while unpleasant or undesirable, are not so extreme that they rise to the level of a constitutional deprivation, and he has not alleged sufficient facts to establish defendants Baldwin, Poe were deliberately indifferent to the conditions in his cell.

For all of the foregoing reasons, the claims against defendants Robinson,

Baldwin, Poe, Gadson, Lewis and Wilson are due to be dismissed.

**C.      Fourteenth Amendment**

**1.      Due Process**

"It is well established that the due process clause is only triggered by the deprivation of a protected [liberty] interest."   *Pierce v. King*, 918 F. Supp. 932, 943 (E.D. N.C. 1996).   In almost all instances, a determination that the plaintiff has a liberty interest in the deprivation about which he complains is a threshold question which must be answered in the affirmative before a procedural due process claim becomes viable.   If this question is answered in the negative, no further inquiry is required.   However, if the deprivation resulted from admitted lies or deception, further study is necessary even if a liberty interest is not implicated.   In those cases, the court must determine whether the inmate review itself was conducted in such an 'arbitrary and capricious' manner that a substantive due process right has been implicated.   The plaintiff provides no facts surrounding the disciplinary infraction other than its title and that defendant Diming instituted it.   In the discussion below, this court shall determine whether Plaintiff's procedural and/or substantive due process rights were violated.

"Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."

*Sandin v. Conner*, 515 U.S. 472, 485 (1995).   There is no authority for finding that a freestanding constitutional liberty interest exists in an inmate's privileges. However,

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.   See also *Board of Pardons v. Allen*, 482 U.S. 369 (1987).   But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,  . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. at 483-484.

The plaintiff alleges Nurse Diming instigated and was the arresting officer in his receipt of a disciplinary infraction, but he does not state what punishment he received as a result.   (Doc. 8 at 1-2).   Because he not established that his punishment was atypical and significant compared to the ordinary incidents of prison life, the plaintiff has not met the threshold requirements necessary to invoke the protection of the due process clause.   He also complains Nurse Diming did not have the authority to pursue a disciplinary infraction against him, but the provision of Administrative Regulation # 403 he cites to define employees with the authority to do so would clearly include Nurse Diming.   (*Id.*).   Since Diming is an employee of Corizon, the company that has contract with the Alabama Department of Corrections to provide medical services to inmates, she is a "contractor" and thus an

ADOC employee, as defined by Administration Regulation #403. (*Id.* at 2). Moreover, the Regulation has a catch-all employee definition because the particular officials listed in the definition are not all-inclusive. (*Id.*). Thus, Diming had authority to bring the disciplinary infraction against the plaintiff. Accordingly, the plaintiff has failed to state a procedural due process claim upon which relief can be granted.

Alternatively, even if the plaintiff did have a liberty interest in the punishment he received, he does not allege prison officials refused to give him a disciplinary hearing that comported with due process, and he makes no specific allegations that there was no evidence to support the infraction. *See O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) ("*Wolff* instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action.")); *see also Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (holding that procedural due process is satisfied is if there is "some evidence" in the record to support the finding of guilt.)).

For all of the foregoing reasons, the plaintiff's due process is claim is due to be dismissed for failure to state a claim upon which relief may be granted.

## 2.      Equal Protection

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318 -1319 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1986)).   Although the plaintiff asserts that his right to equal protection was violated, he identifies no facts against any defendant in support of this claim.  (Doc. 1 at 6).  He does not allege any factual basis for inferring that he was treated discriminatorily because of a constitutionally suspect classification, such as race or national origin.   Because it is vague, general, and conclusory, the equal protection claim is due to be dismissed.

## V.      State law and/or common law claims

It is recommended that this court decline to exercise supplemental jurisdiction over any state law and/or common law claims against all defendants, including defendants Leggett, Harrison, and Gant, and all such state-law claims should be

dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). Furthermore, although the plaintiff has stated sufficient facts to establish an Eighth Amendment medical care claim against these three defendants, other than to assert that he desires to sue the defendants under state law and common law, he identifies no legal theory nor is a state law or common theory readily discernible that would be supported by the factual allegations underlying the plaintiff's allegations against them.[5] Thus, even if supplemental jurisdiction were granted over the state law and common law 'claims' against defendants Leggett, Harrison, and Gant, they are due to be dismissed for failure to state a claim upon which relief may be granted.

## VI.   Recommendation

For the reasons stated above, the magistrate judge **RECOMMENDS** that all claims against all defendants in this action be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2), with the exception of the plaintiff's Eighth Amendment claims against defendant Leggett for interfering with his medical care and defendants Harrison and Gant for failing to respond when they found him unconscious in his cell. It is **FURTHER RECOMMENDED** the plaintiff's Eighth Amendment claim against

---

[5]   Although plaintiff has alleged sufficient facts to state an Eight Amendment deliberate indifference claim against these defendants. There is no analogous state-law claim. Neither Leggette nor Harrison is a medical professional subject to a medical malpractice claim. Although Nurse Gant is a medical professional, plaintiff does not allege that she was *negligent* when she left him unconscious in his cell.

defendants Leggett, Harrison, and Gant be **REFERRED** to the undersigned for further proceedings.   Finally, it is **RECOMMENDED** that the court decline to exercise supplemental jurisdiction over the plaintiff's state law and common law claim.

### VII.   Notice Of Right To Object

The plaintiff may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.   Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.   Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.   Objections not meeting the specificity requirement set out above will not be considered by a district judge. The filing of objections is not a proper vehicle to make new allegations or present additional evidence.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made

only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DONE this 12th day of January, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE